**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Sousan Alexander,

Plaintiff,

v.

T. Palmer, et al.,

Defendants.

No. CV-26-04593-PHX-JAT

**ORDER**

Plaintiff Sousan Alexander raises a host of federal and state actions against a host of defendants in what can best be described as an attempt to repossess her former residence and belongings. Pending before the Court is American Residential Properties' ("ARP") and Hamed Armin's Motion to Dismiss. (Doc. 30). The Court will refer to these parties as the "ARP Defendants." Also before the Court is Defendants Capt. Tim Palmer, Sgt. Trask Moore, Sgt. Joshua Chagolla, Dep. Brett Palmer, Dep. Keith Henry, Dep. Brent Komorowski, Dep. Jerry Miller, Dep. Nicholas Udall, and Dep. Romell Alesna's Motion to Dismiss. (Doc. 31). These officers serve the Maricopa County Sheriff's Office and will be known as the "MCSO Defendants." Because the Court lacks jurisdiction over this case, the Motions will be granted.

## I. BACKGROUND

This case generally concerns a state court eviction proceeding and its aftermath. In January 2026, ARP filed a complaint in the Maricopa County Arizona Superior Court

alleging that it had purchased a property following foreclosure of that property.[1] (Doc. 31-1 at 1-2). ARP further represented that a Notice to Vacate was executed but that Plaintiff refused to do so. (*Id*. at 5-6). Plaintiff represented herself in a proceeding in which the state court granted judgment of forcible detainer against her. (*Id*. at 6).

It found that Plaintiff's right to and possession of the property was ended and that ARP was awarded immediate possession of the same. (*Id*. at 8-9). The court further warned that if possession was not rendered to ARP by February 16, 2026, a writ of restitution would be issued to the Sheriff commanding him to restore such possession to the rightful owner. (*Id*.). Such a writ was served on Plaintiff on February 26, 2026, warning her that remaining or returning to the property would be criminal trespass. (*Id*. at 11, 13).

MCSO Defendants' removal of Plaintiff from the property is the event at issue here. Plaintiff asserts in her Second Amended Complaint that MCSO Defendants entered the property and removed her without providing the opportunity to gather belongings. (Doc. 29 at 4-7). She alleges that the officers unconstitutionally executed the writ and prevented her from entering the property. (*Id*.). Since then, Plaintiff explains that she and her daughter lacked stable housing and could not access their personal belongings. (*Id*.).

Hoping to end these circumstances, Plaintiff filed suit against MCSO Defendants. Count One asserts that they violated her Fourth Amendment rights by employing various tactics.[2] (*Id*. at 8). Count Two claims that MCSO Defendants violated her Fourth Amendment rights by unlawfully seizing her person when preventing her from reentering the property. (*Id*.). Count Three posits that they deprived her of liberty and property interests by failing to provide her notice of her removal. (*Id*.). And Count Eight accuses MSCO Defendants of violating the Arizona Constitution's protection against the disturbance of private affairs in the home. (*Id*. at 10).

Plaintiff also alleges that Maricopa County is at fault for her alleged injuries. Count

[1] "It is well established that [courts] may take judicial notice of judicial proceedings in other courts," *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014), including at the dismissal stage, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[2] As part of that claim, Plaintiff initially claimed that the existence of a court case precluded MCSO Defendants' ability to effectuate the writ. (Doc. 29 at 8). Plaintiff has conceded that there was no legal basis for that claim in her briefing. (Doc. 36 at 4).

Four would hold the County liable for the federal violations described in the prior counts. (*Id*. at 9). Count Six contends that the County violated the Americans with Disabilities Act by traumatizing Plaintiff's autistic daughter during the officers' execution of the writ. (*Id*.). Count Seven then alleges that the County discriminated against either her or her daughter in violation of the Rehabilitation Act. (*Id*. at 10).

Turning to the purchaser of the property, Count Nine says that the ARP Defendants are liable for wrongful eviction under state law insofar as the execution of the writ damaged her personal property and failed to comply with state procedure. (*Id*.).

Finally, Plaintiff extends certain causes of action against all Defendants. Count Five contends that two or more of the Defendants conspired to deprive Plaintiff of her rights by planning, executing, or benefitting from her removal. (*Id*. at 9). Count Ten then argues that the property continues to be unlawfully withheld by all Defendants. (*Id*. at 10).

The Second Amended Complaint therefore requests that the Court issue an equitable order restoring Plaintiff to possession of her residence and belongings while directing Defendants to stop interfering with her enjoyment of the same. (*Id*. at 11). Plaintiff would also have the Court grant her compensatory, punitive, and statutory damages. (*Id*.).

MCSO Defendants and ARP Defendants now move to dismiss the claims against them. (Docs. 30, 31). Both contend that those claims fall outside the Court's subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and that Plaintiff failed to state a claim, *see* Fed. R. Civ. P. 12(b)(6).

## II. ANALYSIS

Before the Court can respond to either defense, however, it must address the claims brought against Maricopa County. On October 15, 2026, the Court explained that Plaintiff had failed to properly serve the County within the timeline and parameters articulated in the Federal Rules of Civil Procedure. (Doc. 33). The Court accordingly ordered Plaintiff to show cause why Maricopa County should not be dismissed for failure to serve. (*Id*.).

But response there came none. Because Plaintiff has failed to properly serve Maricopa County and has not responded to the aforementioned Order, the Court will

dismiss without prejudice Maricopa County and the claims independently alleged against it. For that reason, the Court will not address Counts Four, Six, and Seven. *See* Fed. R. Civ. P. 4(m); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). With that resolved, the Court considers whether it may hear any of the claims Plaintiff brought.

While district courts have original jurisdiction over civil actions involving federal questions, they lack power "to review directly cases from state courts," even if those cases would involve federal issues. *Atlantic Coast Line R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); 28 U.S.C. § 1331. To protect the separate appellate pathways of federal and state claims, the Supreme Court created what is called the *Rooker-Feldman* doctrine. *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1747 (2026).

Under that doctrine, this Court cannot hear any "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting . . . review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Or, as the Ninth Circuit Court of Appeals said, the doctrine stops district courts from considering "de facto appeals" where "the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). In that sense, an action need not be "styled as a direct appeal" to invoke the *Rooker-Feldman* doctrine's jurisdictional bar. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).

The Supreme Court has emphasized that the application of the doctrine is narrow. *See Univ. of Maryland*, 146 S. Ct. at 1747. The Ninth Circuit's approach holds that the doctrine applies when a plaintiff asserts "as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief").

When a federal plaintiff seeks to bring a de facto appeal of a state court decision, she may not "litigate an issue that is 'inextricably intertwined' with the state court judicial

decision from which appeal is brought." *Noel*, 341 F.3d at 1158 (quoting *Dist. of Colum. Ct. of Appeals v. Feldman*, 460 U.S. 462, 487 (1983)). In *Feldman*, for instance, although a challenge that a state court acted arbitrarily was "not a direct challenge to its judgment," the Supreme Court found that the district court lacked subject-matter jurisdiction because the challenge implicated the merits of the state decision. *Feldman*, 460 U.S. at 486-87.

A majority of Plaintiff's claims run afoul of the *Rooker-Feldman* doctrine, for they would necessarily require the Court to find that "the state court's decision was wrong and thus void" or otherwise throw that decision into question. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2009). Indeed, most of the Second Amended Complaint walks a tightrope, attempting not to trigger jurisdictional bars while still requesting relief for the consequences of the state court decision.

Count One is styled as an attack on the tactics and manner MCSO Defendants used to execute the writ. *See* (Doc. 29 at 8 (citing the time of day they executed the writ, the lack of advance notice she received, and lack of an opportunity to retrieve possessions)). But it ultimately depends on the contention that there was something defective with the writ that the officers produced to justify their intrusion on the property. *See* (*id.* (claiming that the officers' actions were unreasonable given the inadequacy of the "months-old" writ)).[3] The Fourth Amendment claim, in other words, essentially argues that MCSO Defendants used improper tactics to enforce an unenforceable writ. And determining whether the writ lacks force invites the Court to "review and reject" the state's judgment. *See Searle v. Allen*, 148 F.4th 1121, 1130 (9th Cir. 2025).

The focus on conduct still implicates whether the state court's writ of restitution was legally insufficient. *See Henrichs*, 474 F.3d at 616. Or, as another district court said, even though a claim is not written to directly appeal a foreclosure decision, it may be clear that it "'is based entirely on the alleged impropriety of the foreclosure[,]' and any newly framed allegations that defendants actions were 'constitutionally defective' does not provide

[3] Plaintiff has not explained why, or cited any authority supporting, why this writ should be considered ineffective given its age. And Arizona merely requires a writ to be executed as "promptly and expeditiously as possible." A.R.S. § 12-1178. That provision does not set a timeline for finding that any given writ of restitution is void or unenforceable.

[plaintiff] with another bite at the apple in this court." *Sepeda v. HSBC*, No. 1:23-cv-03776 (UNA), 2024 WL 474524, at *2 (D.D.C. Feb. 5, 2024) (quoting *Hunter v. U.S. Bank Ass'n*, 698 F. Supp. 2d 94, 99–100 (D.D.C. 2012)). Count One's manner-of-execution disguise, therefore, does not fool the Court—this action actually targets the validity of the writ that the MCSO Defendants were acting on.

An examination of Plaintiff's desired relief likewise unmasks the nature of her claim. *See Bianchi*, 334 F.3d at 900 (holding that courts must pay "close attention to the *relief* sought by the federal-court plaintiff" when determining whether *Rooker-Feldman* applies); *Noel*, 341 F.3d at 1163-64. Plaintiff requested that she be reunited with her property and that Defendants should be barred from disturbing Plaintiff's possession of the same. (Doc. 29 at 8, 10-11). That relief would "effectively reverse the state court decision or void its ruling" that Plaintiff was no longer the rightful owner or possessor of the property. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). As the Ninth Circuit has noted, such requests to reverse the execution of a state court action "present *Rooker-Feldman* problems." *Miroth v. County of Trinity*, 136 F.4th 1141, 1155 (9th Cir. 2025).

Viewing the claim as simply requesting damages for an alleged Fourth Amendment violation connected to the execution of the writ fares no better for Plaintiff. *See* (Doc. 29 at 8, 11). The "source of the injury," which was "the state-court judgment itself," would be identical. *See Land & Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674, 679 (5th Cir. 2015); *Aumueller v. Ottawa Cnty. 58th Dist. Ct.*, 2008 WL 52479, at *2 (W.D. Mich. Jan. 2, 2008); *Hunter*, 698 F. Supp. 2d at 99-100. The relief Plaintiff requests for the alleged violations, therefore, reveals that she seeks relief from the consequences of a state court decision.

At bottom, "it is impossible to attack a state court order in federal court," just as it is "impossible to attack the implementation of that order by suing [those] responsible for effecting the decision." *Busch v. Torres*, 905 F. Supp. 766, 771 (C.D. Cal. 1995). Count One of Plaintiff's Second Amended Complaint ignores that legal directive. Her allegations against MCSO Defendants invariably depend on her conclusion that the effectuated writ was inadequate in some manner because of its age. *See* (Doc. 29 at 8). That argument, and

the relief she requests in connection, targets the validity of the writ and the state's authority to enforce its judgments.[4] *See Honickman v. Amwest Funding Corp.*, No. 2:26-cv-05709-JFW-AJR, 2026 WL 2087407, at *2 (C.D. Cal. July 20, 2026).

Plaintiff makes unconvincing counterarguments to avoid this conclusion. (Doc. 36 at 3-4). A general theme of her briefing is a conspicuous attempt to distance herself from the language of her Second Amended Complaint insofar as it appears to challenge the validity of the state court writ or judgment. *See, e.g.*, (*id*. (explaining that she does not, in fact, seek to be the rightful owner of the property and that her claims were "inartful" as drafted)). But the Court examines the substance and face of a *complaint* when confronted with a motion to dismiss, not amorphic interpretations of that document during the parties' briefing. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). These attempts to rewrite the Second Amended Complaint will not be entertained.[5]

Still, Plaintiff cites to certain cases she believes bolster her Fourth Amendment claim. Chief among these citations is the Supreme Court's decision in *Sodal v. Cook Cnty.*, 506 U.S. 56 (1992). (Doc. 36 at 3-4). That case concerned a landlord who forcibly removed a mobile home tenant without a lawful order and with the assistance of police officers, who towed the mobile home away. *Sodal*, 506 U.S. at 58-60. The Court concluded that the tenant's home was seized within the meaning of the Fourth Amendment and explained that standard applicable to the constitutionality of such seizures is one of reasonableness. *Id*. at 71. It also indicated that the ruling would likely have been different if the landlord had a lawful eviction order for the officers to execute. *Id*.

Contrary to Plaintiff's reading, *Soldal* did not discuss the manner or reasonableness

[4] To the extent that one could view Count One as encompassing multiple claims, each featuring an aspect of the writ's execution, *see* (Doc. 29 at 8), the Court finds that each of these aspects are intertwined with the main issue presented by the Second Amended Complaint: the removal was forcefully conducted pursuant to a void writ.

[5] Not such that such claims would proceed. In all events, Plaintiff fails to state a claim because she lacks Fourth Amendment standing. *See Rakas v. Illinois*, 439 U.S. 128, 144 (1978). She did not have a reasonable expectation of privacy in a property that was not hers. *See Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186 (9th Cir. 2015) ("[A] defendant has standing to sue under the Fourth Amendment only if it was *his* person, house, paper, or effect searched") (emphasis in original). Nor has she explained under what authority MCSO Defendants' conduct for any alleged tactic was unreasonable under the Fourth Amendment.

of the officers' actions; it remanded that question. *Id*. at 72. Nor does that case generally discuss the reasonableness of seizures of a person's effects when the government violates no statutes or presents a valid court order. *Contra* (Doc. 36 at 3). In fact, all it says on that front is that unreasonableness would be a "laborious" thing to prove if the officers were in possession of a court order, as MCSO Defendants were. *Soldal*, 506 U.S. at 71. Far from favoring Plaintiff's perspective, the holding in *Soldal*—insofar as it can be read to apply—favors dismissal.

Plaintiff also relies on *Kougasian* to make her point. (Doc. 36 at 3-4). That case, she says, applied "*Soldal*'s framework" in the *Rooker*-*Feldman* context.[6] The Court disagrees. At the outset, the Court notes that *Kougasian* does not mention either *Soldal* or a Fourth Amendment claim. Rather, the case concerns a plaintiff's attempt to nullify a state court judgment based on claims of extrinsic fraud. *Kougasian*, 359 F.3d at 1141.

The Ninth Circuit determined that the *Rooker*-*Feldman* doctrine did not apply since the plaintiff did not "allege a legal error by the state court," but "a wrongful act by the adverse party." *Id*. at 1141-42. Here, in contrast, Plaintiff alleges that the writ executed by MCSO Defendants was legally insufficient and an improper document through which to remove her, her daughter, and her possessions from the property. (Doc. 29 at 8). That claim, which would serve to reverse the removal or award damages for a state execution of an allegedly unlawful state writ, is just the sort of action that *Rooker*-*Feldman* denies.[7] *See Miroth*, 136 F.4th at 1155.

The same is true with regard to Count Two, which contends that MCSO Defendants unlawfully seized her person when removing her from the property. (Doc. 29 at 8). In fact, this claim directly depends on the unlawfulness of either the writ or the state court decision.

---

[6] As best the Court can tell, "*Soldal*'s framework" is the settled understanding that the Fourth Amendment protects against unreasonable searches and seizures. *See Soldal*, 506 U.S. at 71. After all, the Court did not read the case as Plaintiff did, nor did the Supreme Court seem to formulate a framework streamlining cases like this one.

[7] Plaintiff also cites to *Wilson v. Arkansas*, 514 U.S. 927 (1995) in her Second Amended Complaint. (Doc. 29 at 8). There, the Supreme Court held that, "in some circumstances an officer's unannounced entry into a home might be unreasonable." *Wilson*, 514 U.S. at 934. It is not apparent from Plaintiff's briefing or reasoning how this case would rescue her facts from the *Rooker*-*Feldman* doctrine.

The Second Amended Complaint itself makes this clear twice. It first contends that MCSO Defendants physically prevented Plaintiff from entering when "[n]o court order authorized her exclusion at the moment beyond the months-old writ." (*Id.*). The claim then continued, reporting that the officers' "physical blocking of Plaintiff's re-entry to *her* home" was an unconstitutional seizure. (*Id.*).

The second claim thus depends on two assertions that would negate the legal force of the state court's ruling. It would have the Court affirm that the residence belongs to Plaintiff despite the state proceedings, and it would have the Court find that the writ was unlawful insofar as it prevented Plaintiff from entering what she described as her property. *See* (*id.*). To rule that her exclusion was unlawful, the Court would have to "reverse the state court decision or void its ruling" that Plaintiff was no longer the rightful owner or of the property. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). This it cannot do.

Because this claim is essentially a complaint of an injury caused by a state judgment, the Court is instead left with the conclusion that it has no jurisdiction to hear the claim. *See Exxon Mobil*, 544 U.S. at 284. Plaintiff again attempts to remodel her claim in her briefing by recharacterizing it as an unlawful seizure of her belongings, *see* (Doc. 36 at 4), but the Court focuses on the claims actually alleged.[8] *See Van Buskirk*, 284 F.3d at 980.

Count Three, meanwhile, argues that MCSO Defendants deprived Plaintiff of notice or an opportunity to be heard under the Fourteenth Amendment when seizing the property. (Doc. 29 at 8). Although distinct from a direct challenge to the state court judgment, Count Three still depends upon a finding that the state court decision was in error. *See Feldman*, 460 U.S. at 486-87; *Cooper*, 704 F.3d at 782; *Guess v. Bd. of Med. Exam'rs*, 967 F.2d 998, 1002–03 (4th Cir.1992).

Plaintiff's contention that she was denied proper due process to challenge her removal necessarily casts doubt on the proceedings she participated in that resulted in a judgment

[8] It should be noted that this remodeled claim may be dismissed anyway if there exists an available, meaningful state post-deprivation remedy for this loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has not alleged in her Second Amended Complaint or in her briefing that she has attempted such a remedy or that the same does not exist or is unavailable.

against her. *See Bianchi*, 334 F.3d at 898. Indeed, Plaintiff could have raised any due process arguments during or after these proceedings and appealed them through the proper avenue. And since relief can only be predicated on a conviction that the state court denied Plaintiff due process, the Court views this claim as an impermissible appeal of that denial. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 995-96 (9th Cir. 2002).

Plaintiff does not contest this analysis in her briefing, conceding that she received due process in the state court eviction proceedings. (Doc. 36 at 5); *see Feldman*, 460 U.S. at 486-87. Rather, she asserts that she was due an indeterminant form of additional proceeding that would allow her to be heard on issues concerning the execution of her removal. (Doc. 36 at 5). But the Court is unconvinced. Plaintiff has provided no authority to support her beliefs that she was owed a proceeding that would detail the precise date, time, and manner of her removal. Moreover, the state court proceeding—which she attended—informed her of the time after which she would be considered a trespasser on the property. (Doc. 31-1 at 8-9). In the end, this claim is nonjusticiable; it doubts the lawfulness and adequacy of the state court proceedings leading to her removal. *See Campbell v. City of Spencer*, 682 F.3d 1278, 1284 (10th Cir. 2012).

Next is Count Five, in which Plaintiff avers that some combination of Defendants "conspired" to deprive her of the equal protection of the law "by planning, authorizing, executing, and benefitting" from the removal and exclusion of Plaintiff from her residence. (Doc. 29 at 9). The face of the Second Amended Complaint lacks any identifiable factual allegations that could possibly support the accusation. But more than that, this claim again depends in material part of the unlawfulness of the state court action or the resulting writ.

The thrust of this claim is that one or more Defendants conspired to recover on the state court's judgment against Plaintiff by removing her and preventing her from enjoying her otherwise lawful occupation of the property. But that theory directly clashes with the state court's determination that Plaintiff was *not* the proper owner of the property and was required to vacate the residence. *See Wright v. Tackett*, 39 F.3d 155, 156-58 (7th Cir. 1994)

(ruling that the *Rooker-Feldman* doctrine prevents consideration of a conspiracy claim that defendants interfered with a plaintiff's civil rights by collecting on a foreclosed property). Though styled as a claim under 42 U.S.C. § 1985, Count Five substantively requires the Court to find whether the state court's decision was correct. *See Searle*, 148 F.4th at 1130.

Count Ten, in which Plaintiff accuses all Defendants of unlawfully withholding her property from her, is equally ill-fated. That claim simply requests acknowledgment that she is the rightful owner of the property and the reversal of her removal therefrom. (Doc. 29 at 10). No federal law was cited purporting to vest this Court with the authority to order such a remedy. (*Id.*). Rather, Count Ten boldly asks the Court to review and discard the state court ruling that decrees that ARP has possession rights of and the title to the property at issue. The *Rooker-Feldman* doctrine prevents the Court from engaging in such a review. *See Henrichs*, 474 F.3d at 616.

Applying the *Rooker-Feldman* doctrine "can present challenges for district courts." *Miroth*, 136 F.4th at 1159. But not here, for all Plaintiff's alleged federal claims lead back to the validity of the state court's judgment and writ of restitution. Without the state court's decision, Plaintiff would have no complaint against any single defendant; she would still possess the property at issue and her associated belongings and there would be no injury to potentially redress. *See Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993). In other words, any resolution of the claims above would require the Court to evaluate the merits of the state's decision or an inextricably tied matter. *See Noel*, 341 F.3d at 1164.

The foregoing leaves Count Eight—a claim grounded in the Arizona Constitution—and Count Nine—a claim grounded in Arizona law. The Court has jurisdiction over state actions that are closely related to Plaintiff's federal actions such "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Yet supplemental jurisdiction may be declined by the Court if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Prather v. AT&T, Inc.*, 847 F.3d 1097, 1108 (9th Cir. 2017).

Here, the *Rooker-Feldman* doctrine prohibits any consideration of Plaintiff's federal claims over which it had original jurisdiction. Because the Court dismissed these matters

for lack of subject-matter jurisdiction, the remaining state law claims will be dismissed. *See Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806-07 (9th Cir. 2001) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir.1996)). Counts Eight and Nine will thus be dismissed without prejudice. *See Les Shockley Racing v. Nat'l Hod Rod Ass'n*, 884 F.2d 504, 509 (9th Cir.1989).

## III. CONCLUSION

Although Plaintiff's Second Amended Complaint purportedly reported violations of federal law, the thrust of its allegations was that either a state court judgment or writ was unlawful and reversible. But the *Rooker-Feldman* doctrine prevents Plaintiff from seeking "a reversal of a state court judgment simply by casting [her] complaint in the form of a civil rights action." *See Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (1984).

The Court therefore lacks subject-matter jurisdiction over her federal claims and, as a result, pendant jurisdiction over her claims arising from state law. And where jurisdiction ceases to exist, the "only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).[9]

Accordingly,

**IT IS ORDERED** that MCSO Defendants' Motion to Dismiss (Doc. 31) is granted.

**IT IS FURTHER ORDERED** that the ARP Defendants' Motion to dismiss (Doc. 30) is also granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. 34) is denied as moot.

**IT IS FURTHER ORDERED** that Defendant Maricopa County is dismissed without prejudice for failure to serve.

/ / /

/ / /

---

[9] Even though this dismissal is without prejudice, because the Court did not reach the merits of Plaintiff's claims, Plaintiff is barred from re-filing the federal claims in federal court because to do so would unreasonably and vexatiously multiply these proceedings. Thus, if Plaintiff re-files these claims in federal court, she may be subject to sanctions. *See* 28 U.S.C. § 1927.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment, accordingly, dismissing these claims without prejudice, and since such judgment resolves all claims against all Defendants, close the case.

Dated this 9th day of November, 2026.

James A. Teilborg
Senior United States District Judge